■ MURRAY COHEN et al., as Administrators of the Estate of STEPHEN COHEN, Deceased, Respondents, v ST. REGIS PAPER COMPANY et al., Appellants and Third-Party Respondents. SKIPPY ICE CREAM CORP., Third-Party Appellant. — Judgment unanimously reversed, on the law and facts, without costs, complaint dismissed against defendant Red Diamond Dry Ice & $CO^2$ Corp. and new trial granted against defendant St. Regis Paper Co. Memorandum: Defendants appeal from a judgment following a jury verdict awarding money

damages for personal injuries and for wrongful death of plaintiffs' son, who had been working as a driver and a route salesman for third-party defendant Skippy Ice Cream Corporation. He was found unconscious with the upper portion of his body lodged inside an ice cream freezer located in a Skippy truck. Death was caused by suffocation from carbon dioxide emitted from the dry ice that cooled the truck freezer. Red Diamond Dry Ice & $CO_2$ Corp. was charged with liability because of its failure to properly warn the decedent of the dangers of dry ice that it sold to decedent's employer, Skippy. St. Regis Paper Co. was charged with liability for defects in the ice cream cooler which the predecessor of St. Regis allegedly manufactured and sold to Skippy. We conclude that plaintiffs have failed to prove a cause of action against either defendant. The duty of Red Diamond as a supplier of dry ice, an item known by it to be dangerous for the use for which it was supplied, was to exercise reasonable care to give warnings of the dangers not only to the purchaser, Skippy, but to Skippy's employees (see Restatement, Torts 2d, § 388; *McLaughlin v Mine Safety Appliances Co.*, 11 NY2d 62, 68). One issue is whether the precautions taken by Red Diamond provided reasonable assurance that the information would reach the decedent (see Restatement, Torts 2d, § 388, Comment *n*, p 308). The record shows that the wrapper around each block of dry ice contained clear and explicit warnings of the danger of suffocation, but these wrappers were, to the knowledge of Red Diamond, removed before the dry ice was placed in the freezer. In addition, Red Diamond warned Skippy of the dangers of dry ice and the necessity of warning its employees, and was assured by Skippy that the warning would be so communicated. Where the danger of serious harm is very great and other means of conveying the warning to the employees of the purchaser are practicable and not unduly burdensome, it may well be that the supplier should be required to adopt them, rather than to rely upon the employer to communicate the information to its employees (see Restatement, Torts 2d, § 388, Comment *n*, pp 309-310). Here, however, we need not decide whether, as a matter of law, Red Diamond fulfilled its duty of using reasonable care to warn the decedent or whether the jury could find that Red Diamond should have provided additional safeguards, such as supplying warning labels to be attached to Skippy's freezers. It is undisputed that the warnings given by Red Diamond to Skippy were communicated by Skippy to decedent. Under these circumstances, we conclude that if there were any negligence on the part of Red Diamond it was not the proximate cause of decedent's death. Plaintiffs also failed to prove their case against defendant St. Regis Paper Co. because they have not provided admissible evidence that the predecessor of St. Regis manufactured or sold the freezer to Skippy. The only evidence connecting Amerio Refrigerating Equipment Co., the predecessor of St. Regis, with the freezer was the testimony of the president of Skippy who said that the freezer was purchased from Amerio Refrigerating in about 1960. At that time Skippy was owned and operated by the father of the witness and as the witness stated, the only basis of his knowledge was that "I was a member, my father's son, and I just remember that about that time he bought some equipment from Amerio Refrigeration. I was at that time working for a different company but lived in the same household. That is the only reason I can remember." On cross-examination he admitted that he based his testimony on something his father told him. Defendant St. Regis objected to the admission of this testimony on the ground that the witness had no direct knowledge concerning the manufacture and sale of the freezer and that the only way he would have knowledge was if his father told him. The trial court erroneously overruled this objection. Here, there is no indication that the witness had personal knowledge of the fact that Skippy purchased the freezer from Amerio. To the contrary, the witness admitted that

the only basis for his knowledge was what his father told him (see McCormick, Evidence [2d ed], § 10, pp 20-21). Further, such testimony does not come under any exception to the hearsay rule. Even if we consider the statement of the witness as admission made by him, it can only be used against the declarant or a person in privity with the declarant (Richardson, Evidence [10th ed], § 211, p 188). It cannot be used as evidence against defendant, St. Regis. Although the Court of Appeals has indicated a tendency to relax the strict requirements of the hearsay rule, it has done so only when "none of the classic dangers, which justify the hearsay rule, are present" (*Letendre v Hartford Acc. & Ind. Co.,* 21 NY2d 518, 524). The main justification for the exclusion of hearsay is the lack of opportunity to cross-examine the declarant who has personal knowledge of the fact. The case of *Vincent v Thompson* (50 AD2d 211), relied upon by the trial court, does not justify the admission of the hearsay evidence here. In *Vincent* (*supra*) the court permitted the plaintiff's parents to testify to the declaration of the physician that he had used Quadrigen to treat the infant plaintiff. There, the main danger justifying the use of hearsay was not present because the declarant, who had personal knowledge of the fact, did testify at the trial and was subject to cross-examination. Here the person with knowledge of the fact was not subject to cross-examination and there are no circumstances that would tend to assure the reliability of his unsworn declaration. Since the plaintiffs relied upon the testimony of the president of Skippy to prove their case and since we do not know whether other evidence exists to identify the manufacturer or seller of the freezer, we do not dismiss the complaint against St. Regis, but we remit the case for a new trial against the defendant (see 10 Carmody-Wait 2d, NY Prac, §§ 70:409, 70:434). (Appeal from judgment of Supreme Court, Monroe County, Davis, J. — wrongful death.) Present — Dillon, P. J., Boomer, Green, O'Donnell and Schnepp, JJ.